NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FELIX DEJESUS<br><br>                    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY<br><br>                    Defendant. | Civil Action No. 10-cv-06311 (SDW)<br><br><br><br>**OPINION**<br><br><br><br>November 28, 2011 |

**WIGENTON**, District Judge.

Before the Court is the appeal from the final decision of the Commissioner of Social Security (the "Commissioner"), denying Felix Dejesus ("Dejesus" or "Plaintiff") disability benefits under the Social Security Act ("the Act"). Dejesus, on appeal, contends that he is entitled to disability benefits under Title II and Title XVI of the Act. Dejesus contends that Administrative Law Judge James Andres (the "ALJ") erred in determining that Dejesus is not disabled under the Act and that his decision is not supported by substantial evidence.

The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated below, this Court **AFFIRMS** the Commissioner's decision.

<u>PROCEDURAL HISTORY AND BACKGROUND</u>

Dejesus was born on January 20, 1957 and is a fifty-four year-old man with a General Education Diploma (or G.E.D.). (R. at 114, 130.) He worked as a construction worker from 1980 to 1993 and as a limousine driver from 1995 to 2005. (R. at 127.) As a limousine driver,

1

Dejesus mostly sat during a typical eight-hour workday, but he sometimes walked or stood for one hour at a time. (R. at 127.)

On May 10, 2007,[1] Dejesus applied for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI of the Act, claiming that he became disabled and unable to work as of December 24, 2005. (R. at 114, 119, 125-26.) He claimed disability due to diabetes and high blood pressure (also known as hypertension).[2] (R. at 125-26.) To support his disability claim, Dejesus provided medical records and testimony.

The Commissioner denied his claim on September 25, 2007,[3] and again on December 6, 2007. (R. at 49-51, 54-59, 61-66.) After his claims were denied, Dejesus requested a hearing before the ALJ, which was held on July 8, 2009. (R. at 15-34.) Following the hearing, the record was held open to allow Dejesus to supplement it; however, additional documents were not filed. (R. at 9.) On November 3, 2009, the ALJ issued a decision denying Dejesus's request for disability benefits, finding that he was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act (the "ALJ's Decision"). (R. at 9-14.) The Appeals Council affirmed the ALJ's Decision on October 6, 2010. (R. at 1-5.) The ALJ's Decision is the subject of Dejesus's current appeal.

**Medical Records and Testimony**

In determining that Dejesus was not disabled under the Act, the ALJ reviewed Dejesus's limited medical evidence, including: a report from treating physician Dr. Gisela Mernne ("Dr. Mernne") (R. at 167-68); a report from consultative examiner Dr. Alexander Hoffman ("Dr. Hoffman") (R. at 169-74); and a Physical Residual Functional Capacity Assessment by Dr.

---

[1] The ALJ incorrectly stated that the application was dated April 10, 2007 rather than May 10, 2007. (R. at 9.)
[2] In addition, Plaintiff now argues that he should have been found disabled for these reasons and due to a visual impairment. (R. at 13-14.)
[3] The ALJ incorrectly stated that the application was denied initially on April 10, 2007 rather than on September 25, 2007. (R. at 9.)

Kopel Burk ("Dr. Burk"). (R. at 175-82.) Furthermore, the ALJ considered the testimony of Dejesus. (R. at 15-34.) A brief summary of the relevant medical records and testimony follows.

Dr. Mernne's report, dated June 14, 2007, summarized Dejesus's treatment history. (R. at 167-68.) Dr. Mernne first saw Dejesus on February 27, 2003 and indicated that Dejesus had "a history of noninsulin-dependent diabetes mellitus" and was on the medication Glucotrol. (R. at 167.) Dr. Mernne continued to see Dejesus for the next few years and noted that Dejesus had cancelled multiple appointments, was noncompliant, and that his blood sugar was not well-controlled. (R. at 167-68.) Dr. Mernne discussed the risks of noncompliance with Dejesus, including the "risk of death, blindness, peripheral vascular disease, and MI." (R. at 168.) Dr. Mernne noted on March 10, 2006, that Dejesus was seen by another doctor and "had no complaint of feet pain or anything." (R. at 168.) Dr. Mernne's last treatment with Dejesus was on January 3, 2007, and she indicated that Dejesus had a hemoglobin Alc of 10, a cholesterol level of 183, and that his blood sugar was still not well-controlled. (R. at 168.)

On September 10, 2007, Dr. Hoffman examined Dejesus. Dr. Hoffman's report indicated that Dejesus "had some problems with his visual acuity but . . . had no recent eye examinations[,] . . . was never treated with laser[,] . . . [and] has no history of renal disease." (R. at 169.) Dejesus's visual acuity without correction is "20/70 in the right eye and 20/20 in the left" eye. (R. at 169.) Further, the report summarized his vision as follows:

> Pupils are equal and reactive to light and accommodation. Extraocular movements are full. Sclerae are nonicteric. Conjunctivae are clear. Anterior chambers are normal. Examination of the fundi reveals background retinopathy in both eyes with scattered hemorrhages and a few hard and soft exudates. The macular area appears to be intact.

(R. at 169-70.)

Dr. Hoffman's report also indicated that Dejesus's physical examination revealed "a

3

well-developed, well-nourished male who appears to be alert . . . [and] lucid." (R. at 169.) Dejesus's "ability to ambulate appears unimpaired," as he walks "without the aid of an assistive device[,] . . . does not appear to be [] ataxic or unstable on his feet[,] . . . [and] gets on and off the examining table without assistance." (R. at 169.) Further, the report stated that Dejesus "appears to have relatively normal response to vibratory sensation of both lower extremities," "can stand on 1 leg at a time and support himself," and "has a little bit of difficulty walking on heels and toes." (R. at 170.) Dr. Hoffman also noted that Dejesus could not remember the names of the medications he was taking and did not bring them with him. (R. at 169.)

The record also includes Dr. Burk's Physical Residual Functional Capacity Assessment dated September 24, 2007. (R. at 175-82.) Dr. Burk noted that Dejesus had no limitations for pushing and pulling activities, but that he was limited to occasionally lifting or carrying twenty pounds, frequently lifting or carrying ten pounds, and standing, walking, and sitting for about six hours in an eight-hour workday. (R. at 176.) Further, Dr. Burk noted that Dejesus could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; could never climb a ladder, rope, or scaffold; and had no manipulative, communicative, environmental or visual limitations. (R. at 177-79.)

The ALJ also considered statements and testimony from Dejesus. Dejesus lived alone, prepared his own meals, went outside every day, drove a car, shopped in stores for food, and handled his own money. (R. at 140-43.) At the July 8, 2009 hearing, Dejesus stated that his daily activities included watching television, reading newspapers, and walking short distances. (R. at 28.) During the hearing, Dejesus's attorney stated that he had new medical reports from a "Dr. Perez" and the "New Jersey Medical Center" that he wanted to introduce into the record and fax to the agency. (R. at 17-18, 26). However, although the ALJ left the record open for thirty

days after the hearing to allow Dejesus to submit the reports, no such reports were submitted. (R. at 9.)

**LEGAL STANDARD**

In Social Security appeals, this Court has plenary review over legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those legal conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, "[t]he ALJ's decision may not be set aside merely because we would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir.

2007) (citing *Hartranft*, 181 F.3d at 360).  The Court is required to give substantial weight and deference to the ALJ's findings.  *Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008).  Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination."  *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).  A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits."  *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

**DISCUSSION**

Under the Act, an individual will be considered disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A) (2006).  The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy. . . ."  42 U.S.C. § 423(d)(2)(A) (2006).  Subjective complaints of pain, alone, cannot be used to conclusively establish disability.  42 U.S.C. § 423(d)(5)(A) (2006).  Instead, a claimant must show that the "medical signs and findings" related to his ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ."  *Id.*

The Social Security Administration ("SSA") utilizes a five-step sequential analysis to determine entitlement to disability benefits.  *Cruz*, 244 F. App'x at 480 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)).  The Supreme Court describes the evaluation process as follows:

> The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work.  In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work.  If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry.  If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps.  At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience.  If the claimant cannot do his past work or other work, he qualifies for benefits.

*Sullivan v. Zebley*, 493 U.S. 521, 525-26 (1990) (citations omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

The burden of persuasion lies with the claimant in the first four steps.  *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).  Once the claimant is able to show that the impairment prevents him from performing his past work, the burden shifts to the Commissioner to demonstrate "that the claimant still retains a residual functional capacity to perform some alternative, substantial, gainful activity present in the national economy."  *Id.* (citing *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)).

Dejesus's contention is that the ALJ's Decision that Dejesus retained the residual functional capacity (or "RFC") for limited light work, including his past work as a limousine driver, does not adequately describe his severe impairments, and that the consideration of his complaint did not utilize the evidence in the record.  (Pl.'s Br. 12-22.)

**The ALJ's Findings**

*Step One, Step Two, and Step Three*

In the ALJ's Decision, at step one, the ALJ determined that Dejesus had not engaged in substantial gainful activity. (R. at 11.) At step two, the ALJ found that Dejesus had diabetes mellitus and hypertension, both of which are severe impairments that significantly affected Dejesus's ability to work. (R. at 11.)

At step three, the ALJ found that Dejesus's impairments did not meet or equal those listed impairments presumed severe enough to preclude any gainful work. (R. at 11.) The Court finds that there is substantial evidence in the record to support the ALJ's finding that Dejesus did not meet a listed impairment, including listed impairments in §§ 4.02 and 9.08. 20 C.F.R. Part 404 Appendix 1, Subpt. P. The ALJ's analysis accurately stated that "the record does not contain the specific findings required by those sections." Although Dejesus argued that the ALJ did not explain his reasoning at step three, Dejesus did not point to medical evidence that contradicts the ALJ's finding at step three. (Pl.'s Br. 17.) Thus, the ALJ's finding that Dejesus did not meet his burden of persuasion to show that he met one of the listed impairments at step three is supported by substantial evidence.

*Residual Functional Capacity and Step Four*

Prior to reaching step four, the ALJ determined that Dejesus retained the RFC to perform limited light work. (R. at 12.) At step four, the ALJ considered Dejesus's RFC and found that Dejesus was capable of performing his past relevant work as a limousine driver, as the job does not require him to perform the limitations described in his RFC assessment. (R. at 13.) Because the ALJ found that Dejesus could perform past relevant work, he did not need to make a determination under step five.

Dejesus asserts that the ALJ's RFC and step four findings are not supported by substantial evidence. (Pl.'s Br. 12.) According to Dejesus, the ALJ improperly evaluated the medical evidence and discredited Dejesus's subjective complaints, including his alleged visual impairment. The Court finds that the ALJ's RFC determination and step four finding was supported by substantial evidence.

Specifically, the ALJ found that Dejesus could perform light work with the following limitations: he cannot climb ladders, ropes, or scaffolds; he can only occasionally climb a ramp or stairs; and he can only occasionally balance, stoop, kneel, crouch, and crawl. (R. at 12.) To support his assessment that Dejesus could perform limited light work, the ALJ gave "significant weight to the opinion of [Dr. Burk], who opined that [Dejesus] has a RFC for light work and could return to his job as a limo driver." (R. at 13.) Indeed, in determining Dejesus's RFC, the ALJ adopted the limitations listed in Dr. Burk's Physical Residual Functional Capacity Assessment. (R. at 176-79.) Further, the ALJ noted that Dejesus was not disabled according to his physicians, did not have "end organ damage" even though his diabetes was not well controlled, and was "not impaired" in his activities of daily living. (R. at 13.)

Dejesus argues that the ALJ's RFC finding did not properly evaluate his subjective complaint regarding the limiting effects of his symptoms. Specifically, Dejesus claims that the ALJ did not consider Dejesus's visual impairment and his alleged loss of feeling in his feet. (Pl.'s Br. 21.) Pursuant to the Commissioner's regulations, the ALJ must determine whether a claimant has a medically determinable impairment that could reasonably cause the subjective symptoms alleged and then "determine the extent to which a claimant is accurately stating the degree of pain [or other symptoms] or the extent to which he or she is disabled by it." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c)). "Credibility

determinations as to a claimant's testimony regarding . . . subjective complaints are for the ALJ to make," and are "entitled to great weight." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 765 (3d Cir. 2009) (internal quotation marks omitted).

In the instant matter, the ALJ found that Dejesus's statements as to his alleged disabling limitations were not credible, at least to the extent that they prevented him from performing a range of limited light work, because they were inconsistent with his daily activities, the objective medical findings, and the record evidence as a whole. (R. at 13.) Although Dejesus's diabetes was described as not well controlled, the ALJ cited Dr. Mernne's report, which indicated that Dejesus "has a long history of being non-compliant with his medication for non-insulin dependent diabetes and hypertension." (R. at 11, 167-68; *see also* 20 C.F.R. § 416.929(c)(3).) Despite Dejesus's complaint of loss of feeling in his feet, the ALJ cited Dr. Hoffman's consultative report which noted that Dejesus "was able to walk without any assistive device" and "could get on and off the examining table without assistance." (Pl.'s Br. 16; R. at 12.) Dr. Hoffman also noted that Dejesus did not have any physical abnormalities, had few problems with his lower extremities, and that his "ability to ambulate appears unimpaired." (R. at 167-70.) The ALJ also stated that Dejesus's daily activities (i.e., preparing meals, going outside every day, driving a car, watching television, shopping, and handling his money) and his medical reports undermine his claims of disabling limitations. (R. at 13.)

Finally, Dejesus argued that he could not perform his past relevant work as a limousine driver because his eyesight prevented him from driving. (Pl.'s Br. 14-15.) However, the medical reports from Dr. Hoffman and Dr. Burk did not indicate such a limiting visual impairment. (R. at 169, 178.) Indeed, Dr. Burk's report specifically indicated that Dejesus had no visual limitations. (R. at 178.) Thus, contrary to Dejesus's assertion, the ALJ's RFC determination that

Dejesus could perform a limited range of light work is supported by substantial evidence.[4] Furthermore, since Dejesus's past relevant work as a limousine driver "does not require the performance of work-related activities precluded by [Dejesus's RFC]," the ALJ's finding at step four is also supported by substantial evidence. (R. at 13.)

As previously noted, the decision of an ALJ, pursuant to the Act, may not be set aside merely because this Court would or could have reached a different decision. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007). The ALJ adequately evaluated the record as a whole and sufficiently explained his reasoning for his findings. After reviewing the administrative record, this Court finds that the ALJ's Decision was based on substantial evidentiary support as required by 42 U.S.C. § 405(g) (2006).

**CONCLUSION**

For the foregoing reasons, the ALJ's Decision is **AFFIRMED**.

s/ Susan D. Wigenton, U.S.D.J.

Orig:    Clerk
           Parties

---

[4] Although Dejesus notes that Dr. Hoffman's report found that he had "background retinopathy," the report does not conclude that Dejesus's eyesight is impaired to the extent claimed. (Pl.'s Br. 13; R. at 169-70.) Additionally, despite Dejesus's assertion that he lost his job as a limousine driver due to his alleged visual impairment, no documentation supporting his testimony was provided, and it is noted that Dejesus continued to drive. (Pl.'s Br. 12-13; R. at 143.) The record as a whole, including Dr. Burk's finding that Dejesus did not have a limiting visual impairment, supports the ALJ's finding that Dejesus did not have a visual impairment severe enough to prevent him from performing the duties of a limousine driver.